## HANGER ET AL V. EVINS & SHINN.

1. PRACTICE: *Giving instructions.*

    Where the length, intricacy or number of instructions asked by the parties may be confusing to the jury, the court should reject both lists, and give such, applicable to the facts, as will clearly present to the jury the main points of law governing the case.

2. EVIDENCE: *Parol, inadmissible to enlarge contract.*

    When a written contract of sale contains no warranty, or an express warranty, parol evidence is inadmissible to show a warranty in the first case; or in the second, that there was another or larger warranty than the one expressed. A warranty is a contract provable only by the contract; but an intentionally false and misleading representation, which induces the contract to the other's injury, is a tort, outside of the contract, and is provable by parol.

3. FALSE REPRESENTATIONS: *When actionable.*

    A false representation, to be actionable, must not only mislead, but must be made fraudulently, and with that intent. No one can be held liable for a false representation who honestly believed it when made, however false it may be; but he is liable if he knew it to be false, or knowing nothing about it, asserted it to be true.

4. WARRANTIES: FALSE REPRESENTATIONS: *Patent defects.*

    Neither warranties nor false representations bind the maker, regarding things patent to any observer who would take the trouble to examine the article, where the aggrieved party has the opportunity of seeing it. But where one of the parties declines the examination on the grounds of his want of experience and judgment, and expressly declares that he confides in the judgment of the other, this imposes upon the other, if he accepts the trust, the duty of fair representations, even as to matters which might easily have been seen by one well acquainted with the subject of the negotiation; but even then he is bound only for a fair exercise of his judgment, and not for an honest mistake.

5. ADMISSIONS: *Of satisfaction with an article before discovery of defects.*

    An expression to the vendor of satisfaction with the article purchased, after using it, will not preclude the purchaser from afterwards setting up real defects then existing, but unknown, and subsequently discovered.

6. RECISSION: *Of purchase, for fraud, what necessary.*
When a purchaser is entitled to rescind a purchase for fraudulent misrepresentations of the seller, his offer to return the property is equivalent to a return; but the offer, to be effective, must be promptly made upon the discovery of the fraud, and accompanied with an offer of compensation for intermediate use; and the condition of the article should be substantially as good as when received.

7. FRAUD: *Diverting purchaser's attention from defects.*
If a vendor, experienced in the manufacture and use of an article, knows that the purchaser is without experience in such things, and that there are material defects in it, which are not apparent to ordinary observation, and he deceitfully induces the purchaser not to enquire into its condition, he is guilty of a fraud, for which the purchaser may recover.

8. SAME: *False representations.*
If a vendor knows the purposes for which an article is intended by the purchaser, and so represents to him, and also knowingly and fraudulently represents that he knows the purchaser's business, and that the article is well fitted for it, and the purchaser rely on such representation, in making the purchase, and they are untrue, it is a fraud, for which he may recover.

APPEAL from *Pulaski* Circuit Court.
Hon. J. W. MARTIN, Circuit Judge.

*W. G. Whipple and W. C. Ratcliffe,* for appellants:

The court erred in ruling out all evidence of a warranty by Evins, and that appellants were concluded by the bill of sale, inasmuch as no warranty was therein expressed. While parol evidence is inadmissible to contradict or vary a written agreement, yet "it is well established that a substantial collateral agreement may be substantiated by parol." *Weaver v. Fletcher,* 27 *Ark.,* 510; *Plant v. Condit,* 22 *Ib.,* 404; *Hooper v. Chism,* 13 *Ib.,* 498; *Tune v. Rector,* 21 *Ib.,* 284. The warranty was the inducement to the acceptance of the bill of sale, the latter being the mere transfer of the title, and not purporting to embrace the whole agreement.

Hanger was justified in relying upon the warranty, rather than his own judgment. *Parsons on Cont.*, vol. 1, *p.* 575, *note H*.

*Dodge & Johnson*, for appellees:

1.   The question of fraud was one purely of fact. The jury were the sole judges of this question, and they found there was no fraud.

2.   The instruction of the court, that there being no warranty of quality in the bill of sale, defendants are estopped from setting up any before that made by parol or verbally, was correct. *Benjamin on Sales, sec.* 202. Whatever may have been the previous conversations, if they at last reduced their agreement to writing, this will be looked upon to contain all that the parties intended should form any part of their bargain, and everything said in previous conversations, not incorporated into the written agreement, will be considered as intentionally rejected. *Roane* v. *Green*, 24 *Ark.*, 210 ; *Waymack* v. *Heilman*, 26 *Ib.*, 449 ; *Weaver* v. *Fletcher*, 27 *Ib.*, 510 ; *Chitty on Cont.*, (11 *Am. Ed.*), 153, *note* (*u.*) ; *Carter* v. *Hamilton*, 11 *Barb.*, 147 ; *Ridgway* v. *Bowman*, 7 *Cush.*, 268 ; *Hakes* v. *Hodgkiss*, 23 *Vt.*, 231 ; *Pitcher* v. *Hennessy*, 48 *N. Y.*, 415 ; *Small* v. *Quincy*, 4 *Greenl.*, 497 ; *Taylor* v. *Riggs.*, 1 *Peters*, 591 ; *Clark* v. *Ins. Co.*, 7 *Lansing*, 322 ; *Eden* v. *Blake*, 13 *M. & W.*, 614–7–8 ; *Stoops* v. *Smith*, 100 *Mass.*, 63–65 ; *Groot* v. *Story*, 44 *Vt.*, 200.

If the contract of sale is reduced to writing, and contains no warranty, parol evidence is not admissible to show one orally made at the time of sale. *Story on Sales, sec.* 358 *and notes;* 1 *Greenl. Ev.*, sec. 275.

3.   The plea that the contract was made on Sunday was abandoned below.

Hanger et al v. Evins & Shinn.

4. The judgment was properly against Peter Hanger. He signed as guardian without anthority, and thus made himself personally liable.

5. It was proper for the court, in the exercise of a wise discretion, and in furtherance of justice, to throw aside the instructions formulated by both parties, and instruct the jury as to the law applicable to the case. The questions of fraud, deceit and misrepresentation, were for the jury, and their verdict will not now be disturbed.

EAKIN, J. The notes in suit were given by appellants, Fred and Peter Hanger, in the purchase of an old ferry boat, for which they took a bill of sale without warranty. It was intended for use at a ferry over the Arkansas river, at Little Rock, which was understood by all parties at the time of the purchase. They set up, by way of defense, that the vendors, through Evins, who conducted the transaction, made to Fred Hanger false and fraudulent representations with regard to the condition of the boat, upon which said Hanger relied; and that afterwards, when the condition of things was discovered, they offered to rescind the contract, and to pay for the use of the boat whilst they had it. They set up the same matter in a separate paragraph, by way of counter-claim, for damages. In both they allege that the boat was comparatively worthless; that Hanger had no experience with, nor knowledge of boats, and so told Evins; and that Evins having experience, and knowing the boat to be of little value, misled Hanger into its purchase. The circumstances of the alleged fraud, and the misrepresentations are set forth in detail, and they make the only issue in the case, which we deem it important to notice.

A long list of instructions was asked upon each side; eleven by the plaintiffs, and nine by the defendants. They

3. PRACTICE: Giving instructions.

42–38

Hanger et al v. Evins & Shinn.

were elaborately drawn, and, it seems, not readily intelligible in all their bearings by ordinary jurors. The court rejected both lists, and gave instructions of its own motion. There is no objection to this practice. It is the best, where the length, intricacy, or number of instructions asked by parties may be confusing. It is very necessary to any useful effect they may have on the minds of jurors, that instructions should be as few, and short, and pointed as may consist with the object of giving clear ideas to the jury of the main points of law governing the case as applied to the facts.

It is made one of the grounds of the motion for a new trial that the court erred in refusing the nine instructions asked by defendants, and in giving the first and second of those given in lieu of them by the court.

Before proceeding to an examination of the instructions, it may be well to announce some elementary principles, which after much discussion, may be now considered as settled by the courts. It is especially desirable that the distinction between a warranty and false representation inducing a contract, be ever kept in view.

*Warranty is a contract.* A warranty is a contract. It may be made expressly, or it may be presumed from the circumstances, that the parties intended it—that it existed in their minds as a contract at the time of the transaction, as one of that class of things that go without saying. The old form of action upon it was *ex contractu.* In abolishing forms the Code has not changed the underlying ideas of any actions, which determine their nature.

*2. EVI-DENCE: Parol, of warranty or false representation when in writing, inadmissible.* It follows that where the parties have by bill of sale, as in this case, or any other instrument, reduced the contract of sale to writing, and have not provided for any warranty, or have incorporated express warranties, no parol evidence can be heard to show in the first case that there was a warranty,

Hanger et al v. Evins & Shinn.

or in the second, that there were other or wider warranties than those expressed. The written instruments are held to contain everything of a contractual character which the parties finally intended should be binding, regardless of all previous negotiations.

In Mr. BENJAMIN's work on *Sales*, sec. 261, this principle is clearly stated, and supported by numerous authorities cited in notes. It is illustrated in the text by reference to the case of *Kain* v. *Old*, 2 *B. & C.*, 627. That case has many points in common with this. It concerned a bill of sale of a vessel, in the usual form, without warranting her to be copper-bottomed. There had been a previous *written* representation by the vendor that she was. This was held no warranty.

It is thus obvious from the record of this case, that no question of warranty can arise in it at all. The bill of sale, and the notes contain all the contract, and they show none.

Deceits, and false representations, intentionally made, regarding material matters, for the purpose of misleading another to his injury, are not contracts in any direct sense. Every one may be presumed, indeed, to agree that he will regulate his conduct by the laws of his country and the rules of fair dealing, and will abide the consequences of failure and detection. But in no other sense are they contracts. They are torts, for which, heretofore, lay actions on the case for deceit. The Code action, or counter-claim, being the old recoupment, is based upon the idea of some turpitude of conduct in the transaction by which the party has been injured. They differ from warranties in two very material points. The latter cannot, when the contract of sale has been reduced to writing, be supplied by parol proof. The former can be shown by parol, for they are torts outside the contract. Warranties bind, if untrue, without any regard to the good faith of the warrantor. This arises

3. FALSE REPRE-SENTA-TIONS: When actionable

Fraudulent representations are outside of the contract, and provable by parol.

from their contractual character.   He takes the risk of their truth and means to bind himself to make a recompense if they are not.   But false representations must not only mislead, but must have been made *fraudulently* and with that intent.   No one can be held liable for them who honestly believed them when made, however false they may be. He is liable, if he knew them to be false, or knowing nothing about them, asserted them to be true.   The questions raised by the paragraphs of the answer, were those of false and fraudulent representations of facts regarding the condition of the boat, misleading the defendants through their agent, Fred Hanger, and inducing the purchase to their injury.   In such cases the counter-claim or old recoupment stands on the same ground with the action for deceit, and any evidence otherwise proper, may be adduced to prove the deceit whether oral or written ; and notwithstanding there may be a written warranty.

4. WAR- RANTIES: REPRE- SENTA- TIONS: Patent defects. There is, in this case, another element which might affect the verdict of a jury.   Neither warranties nor false representations bind the maker, regarding things patent to any observer who might take the trouble to examine the article, and where the party claiming to be aggrieved had the opportunity of seeing it.   This is upon the ground that, with regard to such things, it is not to be presumed that the warranties or representations were intended, upon either side, to apply. The case is different, however, where one of the parties declines an examination, upon the grounds of his want of experience and judgment ; and expressly declares that he confides in the judgment of the other.   This imposes upon the other, if he accepts the trust, the duty of fair representations, even as to matters which might easily have been seen by one well acquainted with the subject of the negotiation.   He will not be excused for want of candor and good faith with regard to such matters, and will be held responsi-

ble for false representations, not made in good faith, believing them to be true. He is bound only to a fair exercise of his own judgment in behalf of the other party, and not for an honest mistake. If the other party desires greater assurance he should demand an express warranty.

We come now to examine whether any of the nine instructions, refused by the court for the defendants, contained any matter which they were entitled, under the evidence, to have impressed upon the jury, and which was not covered by the instructions given on its own motion by the court.

The first, second, third and ninth, ask the court to instruct the jury that false representations made by the defendants, under the circumstances which the evidence tended to prove, and which the instructions detail, would amount to a warranty, if found by the jury, and fix the rule by which damages should be assessed. This was misleading, and the refusal to give them was proper. Whether in ordinary cases, the sale of a boat for the purposes of a ferry would or would not amount to a warranty that it was fit for the purpose, cannot in this case be determined. There was a contract in writing with no such warranty included, and whatever may have been their previous conversations, it must be presumed that the parties waived such warranty when the final agreement was closed. The defense and counter-claim, after proof of the written contract of sale, could only cover damages for a tort committed in the course of the transaction through deceit, by false and fraudulent representations.

The fourth instruction is to the effect that the defendants **5. ADMISSIONS: Undiscovered defects.** would not be bound by a certain letter, in evidence, written a short time after the transaction by Fred Hanger to plaintiff, Evins, in which he said the boat was working well and expressed his satisfaction; if at the time of writing, he had not discovered any defects. That if defects really existed,

such expressions of satisfaction are not conclusive, but are to be taken and weighed by the jury for what they are worth. This might well have been given, in connection with other instructions, explaining that the defects referred to were such as had been falsely and fraudulently represented not to exist. As a matter of law, the instruction was correct, although it is somewhat difficult to imagine how the defects complained of could have gone unnoticed by any one competent to run a ferry.

6. RESCISSION OF PURCHASE What necessary. The fifth asks the court to instruct the jury that, if they found such fraud in the sale as would authorize defendants to rescind it, then an offer by defendants to return and restore the boat would be equivalent to a return.

That instruction presented a correct general view of the law in the abstract, but as applicable to the evidence, was not carefully qualified. To effect a rescission under the circumstances supposed, the offer to return must be promptly made upon the discovery of the fraud, and should be attended with an offer of compensation for intermediate use, and the condition of the article should be such as to enable the purchaser to restore it, substantially, in as good condition as received. Otherwise he must rest upon his remedy by action for the deceit. The proof tends to show that the boat was purchased for temporary use, whilst a new one was being built, and that the defendants, after the defects were known, continued to use it for several months, until the new boat was ready and then laid it up. The defects charged were such as in their nature would reveal themselves at once, at least to the extent of excessive leakage and difficulty of management, in which principally it is urged the unfitness of the boat for its purposes consisted. The instruction would have been misleading.

7. FRAUD: Diverting purchaser's attention from defects. The sixth instruction is to the effect that if the plaintiff, Evins, was found to be a man experienced in building and running boats, and well acquainted with the machinery per-

taining thereto, and the defendant, Hanger, was wholly inexperienced in matters of that kind, which Evins knew, and that there were material defects in the boat, not apparent to ordinary observation, but known to Evins, and he deceitfully induced the defendant not to inquire into the condition of the boat, it would be a fraud, for which defendants might recover. Certainly the proposition of law is correct, but it is not the case made by the evidence. The proof does not tend to show any artifice by Evins to divert Hanger from as full an examination of the boat as he desired to make. It rather tends to show that Hanger, from the first, disclaimed all knowledge of boats and threw himself upon the judgment and honesty of Evins. That, as we said, imposed upon Evins the duty of the utmost frankness and candor, and any failure to reveal material defects known to himself would be fraudulent, although they were such as might have been patent to one versed in the business. But that was not the instruction asked.

The seventh instruction is simply, in effect, that if Evins knew the purposes for which the boat was intended, and so represented to defendant Hanger, together with the representation that he knew defendant's business, and that the boat was well fitted for it, and that defendant relied on those representations in making the purchase, and they were untrue, then defendants should recover.

8. SAME: False representation.

This instruction ignores the distinction between warranties and false representations. As there was a written contract, the warranty, as to fitness, did not exist, and the mere falsity of representations does not create a liability. If the instruction had added that the false representations were made knowingly and fraudulently, it would have been good.

The eighth instruction remedies the defect, and is, in effect, what the former would have been with the additions above suggested. It might well have been given.

Hanger et al v. Evins & Shinn.

All the foregoing instructions were refused, together with the eleven asked by plaintiff. The refusal of those which we have noted, in passing, as unobjectionable will be considered as erroneous, unless we find that the court did not abuse its discretion in discarding all the instructions and framing a set of its own with the design of presenting the whole matter more plainly to the jury.

The first given by the court clearly discarded all consideration of the question of warranty. This was correct.

The second concerns damages for false and frandulent representations, as follows:

"Now the court instructs the jury upon this point, that, for the purpose of determining whether any such fraud was perpetrated, you have a right, and it is your duty, to weigh all the facts and circumstances connected with the the transaction from beginning to end, including the Sunday contract and acts, and if there has been any actual fraud perpetrated by the plaintiffs, in such sale, the defendants have a right to relief in this suit to the extent the evidence shows them to have been injured by the same; and in determining this the jury should consider the relative position and character of the parties to the transaction, the character of the property sold, the means of examining and ascertaining any defects, and how far, as men of reasonable prudence and caution, the defendants had a right, under the circumstances, to rely on, and how far they did rely on the statements of the plaintiffs."

"A purchaser, when he makes his contract, has a right, if he so requires it, to demand an express warranty of the quality of the goods bought, and, in the absence of such warranty, he is presumed to rely upon his own judgment and examination of the property; and, though he may make a bad bargain and pay more than the property is worth, he cannot claim to be relieved from the consequences of his

Hanger et al v. Evins & Shinn.

own imprudence or carelessness, merely on that account. But if, in the making of the contract, the vendor or seller makes use of any artifice or device, or such fraudulent and false representations in regard to the material facts, of which he has special means of information, and knows the buyer is purchasing on the strength of his statements about matters of which he has peculiar means of information, and difficult of access to the buyer, and by such false and fraudulent representations, in such a matter material to the trade, he designedly prevents the purchaser from making examination and induces him to buy in ignorance of such defects, known to plaintiff; then the defendant would be entitled to be relieved to the extent of injury shown by the evidence to have been suffered by him by reason of such false and fraudulent representations. In the absence of any express warranty, the rule of *caveat emptor*, that the purchaser must look out for his own interest, prevails, and he is required by law to exercise a reasonable discretion and prudence to inform himself and discover the quality of the article he buys; and he is not supposed to rely upon any mere ordinary puff or commendation of his goods, made by the seller in the course of the trade, but he may claim relief for any deliberate fraud practiced upon him by the plaintiff seller."

This instruction seems to us to contain a more careful, elaborate, commonsense statement of the law upon the subject of fraud in sales than is generally found practical in the pressure of *nisi prius* business. It is easily intelligible by average jurors, selected to sit in civil cases. It is very favorable to the defendant, as touching the most important matter with regard to which a correct instruction was asked in his rejected series. This concerned fraud in representing the boat as fit for the ferry purposes. Under the instructions of the court, it would have been impossible for the jury to have found for the plaintiffs, if they had believed that they

43 38

Hanger et al v. Evins & Shinn.

falsely represented any facts forming an inducement to the purchase, including representations of fitness, as well as others.

The instructions given by the court supply, we think, all that was refused to defendant, which he had a right to ask. Although they may not be, as to every point of evidence exhaustive, they meet all that should have been given to enable the jury to do justice between the parties.

What will constitute fraud by any kind of deceit, whether by means of concealment, reticense concerning matters of which the party should speak, false representations, or artifices of any kind, must always be determined by the particular circumstances. The criterion is the good sense of the jury, estimating the character of the transaction by applying to the evidence their general knowledge of human motives, and their sense of dealing. Fraud is manifold in its devices, and its ingredients cannot be so defined as to include all cases, save by such general statements as must, after all, refer the question to the judgment of the jury upon the facts. Twelve men, taken from the mass of citizens, will rarely fail to detect a fraudulent intent, if any such existed, from all the circumstances. This they were instructed they might do, in terms broad enough to cover all the points. The instructions were correct and sufficient, and the verdict is not against evidence.

Affirm.