NESTE POLYESTER, INC. *v.* Frank BURNETT, *et al.*

CA 04–1186                                        214 S.W.3d 882

Court of Appeals of Arkansas
Opinion delivered October 5, 2005

414

*Wright, Lindsey & Jennings LLP*, by: *Troy A. Price*, for appellant.

*Garvin, Agee, Carlton & Mashburn, L.L.P.*, by: *John Mashburn* and *Alan Agee*; and *Jones & Harper*, by: *Robert L. Jones III*, for appellees.

OLLY NEAL, Judge. This appeal is from a jury verdict awarding appellees Frank Burnett and Dennis Joslin Company 2000, Inc.,[1] damages in the sum of $2,500,000 for breach of warranty on a defective product used to seal boats. Appellant Neste Polyester, Inc., raises four points concerning Viper's amendment of the complaint to conform to the proof, the trial court's striking of its affirmative defenses, the trial court's failure to submit the case to the jury on interrogatories, and the trial court's failure to award a new trial. Finding no error, we affirm.

---

[1] The original plaintiff was Viper Boats, Inc. Viper's board of directors adopted a resolution calling for the execution of an assignment granting Burnett and Dennis Joslin Company 2000, Inc., all of Viper's right, title, and interest in the lawsuit. Thereupon, Burnett and Dennis Joslin Company 2000, Inc., were substituted as the real parties in interest. For convenience and clarity, we will refer to appellees as Viper.

Viper is a manufacturer of fiberglass recreational boats. Neste manufactures the clear coat Viper used to protect the finish of its boats. From June 1994 until April 1999, Viper purchased all of its clear coat from Neste. In April 1999, Neste informed Viper that all of its clear coat purchased since April 1998 was defective. Viper had manufactured 784 boats using the defective product and, by May 1999, had received twenty-seven complaints. Neste paid for the replacement of these twenty-seven boats. Viper thereafter determined that the only way to remedy the remaining defective boats was to replace them. Neste refused to pay for the replacement of the remaining boats.

On October 23, 2000, Viper filed suit against Neste alleging breach of express and implied warranties, negligence, breach of contract, and fraud.[2] Viper alleged that Neste was liable for the replacement of all 784 boats and that its damages could exceed $10,000,000. In both the complaint and first amended complaint, Viper alleged that the problems with the clear coat threatened to destroy its business reputation and goodwill. Neste denied the allegations.[3]

At a November 25, 2003, pre-trial conference, Viper's attorney disclosed its expert economist, Robert "Jay" Marsh, and announced that Viper was pursing a new approach to damages. That approach was to seek damages for its loss of business and loss of future profits. Neste's then-attorney, Alfred Angulo, recognized that this announcement changed Viper's theory of the case and placed Neste on notice that Viper was seeking damages for the loss of its entire business. Angulo did not object to this change in theories, nor did he move for a continuance.

Following the November conference, a scheduling order was entered providing that Viper was to amend its discovery responses so as to provide the substance of Marsh's opinion by February 5, 2004. Neste was to disclose its expert, together with the substance of its expert's testimony by March 8, 2004. Neste disclosed its expert, Richard Schwartz, after the deadline in the scheduling order and did not provide Schwartz's report. The

---

[2] Suit was originally filed in Baxter County, Viper's principal place of business, and later transferred to Sebastian County, Neste's principal place of business.

[3] Neste also filed a third-party complaint against the manufacturers of one of the components of its clear coat. This third-party complaint was later voluntarily dismissed by Neste.

scheduling order also provided that all exhibits and witness lists were to be exchanged by March 16, 2004. All motions, except for motions *in limine*, were to be filed by May 2, 2004, with all motions *in limine* filed by May 25, 2004.

Viper moved for partial summary judgment as to liability. After Neste failed to respond to the motion, an order was entered granting Viper summary judgment as to the issue of liability. The issue of damages was to be tried.

Later, Viper timely moved for summary judgment on the issue of damages, alleging that, as a result of the problems with Neste's clear coat, Viper's business declined until Viper ceased operations in 2003. The motion was supported by Marsh's affidavit and report, stating that he had calculated Viper's economic loss at $6,452,259. This motion was denied.

After the motion for summary judgment as to damages was denied, Neste filed a timely motion *in limine* seeking to prevent Marsh from testifying at trial because Marsh had no personal knowledge of the matter and because he was addressing a measure of damages that Neste alleged was improper and inapplicable. In an accompanying brief, Neste argued that the proper measure of damages was the difference in the fair market value of the business before and after the event. The court denied the motion.

At trial, Neste also made an oral motion seeking to limit Viper to the damages mentioned in its complaint and amended complaint, arguing that the lost profits discussed were not specifically pled by Viper. The trial court reserved ruling on the issue of the type of damages upon which it was going to instruct the jury and noted that Neste could object to evidence on the different types of damages.

In addition, during trial, Neste filed an answer to Viper's new claim for special damages, asserting that Viper had not pled the issue of special damages for lost profits, as required by Ark. R. Civ. P. 9(g). The answer also asserted other defenses such as release, limitation of damages pursuant to a clause in the invoices, improper party plaintiff, and failure to state a claim upon which relief can be granted. Viper moved to strike the answer as untimely. The trial court ordered the answer stricken.

Neste sought to have the jury return a verdict on special interrogatories while Viper sought a general verdict. Neste's proffered instructions were as follows:

3. Do you find that the defective gel clearcoat sold by Neste was the proximate cause of the demise of Viper Boats, Inc.? ____ YES ____ NO

4. Do you find the plaintiff is entitled to recover from the defendant lost profits that may have been suffered by Viper Boats, Inc.? ____ YES ____ NO

5. What amount of past lost profits, if any, do you determine the defendant should pay to the plaintiff because of the demise of Viper Boats, Inc.? $ _____

6. What amount of future lost profits, if any, do you determine the defendant should pay to the plaintiff because of the demise of Viper Boats, Inc.? $ _____

The trial court decided without explanation to submit the case to the jury on a general verdict form. The trial court also instructed the jury that it should consider two elements of damage: the amount of lost profit, or economic loss, to Viper from any decline in sales and the cessation of its business; and the amount of loss in value of Viper's business assets due to its cessation of business.

The jury returned a general verdict in favor of Viper and awarded damages of $2,500,000. Judgment was entered on the jury's verdict on June 16, 2004. Neste timely filed a motion for judgment notwithstanding the verdict or a new trial, alleging that Viper failed to present legally sufficient evidence to support the damage award or to show a causal link between Neste's actions and Viper's lost profits or demise of its business. Although the motion for judgment notwithstanding the verdict was deemed denied as of July 30, 2004, the trial court entered an order denying the motion on August 4, 2004. This appeal followed.

Neste raises four issues on appeal: (1) that the trial court erred in not requiring Viper to comply with Ark. R. Civ. P. 9(g) and in permitting Viper to present evidence concerning special damages that had not been raised in the pleadings; (2) that the trial court erred in granting Viper's motion to amend the pleadings to conform to the proof and in striking Neste's answer to the claim for special damages because the issue of special damages had not been raised by amendment to the complaint; (3) that the trial court erred in overruling Neste's objection to the general verdict form and refusing Neste's requested verdict on special interrogatories;

(4) that the trial court cumulatively erred by refusing to grant Neste a new trial based on the error in instructing the jury, the jury's error in assessing the amount of recovery, and the irregularity resulting from Viper's change in theories without amendment to the complaint.

In its first point, Neste argues that the trial court erred in permitting evidence to be presented concerning Viper's lost profits because lost profits are special damages which Ark. R. Civ. P. 9(g) requires to be specifically pled and Viper did not comply with that requirement. We disagree.

The parties dispute whether Viper's lost profits were or were not special damages. However, we need not answer the questions of whether lost profits are special damages or whether Viper's complaint was sufficient to plead special damages because, assuming that lost profits are special damages, we hold that the parties tried the issue without objection and, thus, the complaint was properly amended to conform to the proof so as to allege special damages. The purpose of requiring special damages to be specifically pled is to avoid surprise at trial. *Arkansas La. Gas Co. v. McGaughey Bros., Inc.*, 250 Ark. 1083, 468 S.W.2d 754 (1971); *Arkansas State Highway Comm'n v. Dixon*, 247 Ark. 130, 444 S.W.2d 571 (1969). However, if there is no surprise to the defendant, evidence relating to the special damages may be introduced. *McGaughey Bros., supra.*

We hold that Viper substantially complied with Rule 9(g) because the pleadings were amended to conform to the proof by presenting Marsh's summary-judgment affidavit and trial testimony. In *Harrington v. City of Greenbrier*, 262 Ark. 773, 561 S.W.2d 302 (1978), the supreme court assumed, without having to decide, that a plaintiff could assert a new cause of action in his summary-judgment affidavit, without amending his complaint. *See Bonds v. Littrell*, 247 Ark. 577, 446 S.W.2d 672 (1969); *National Sec. Fire & Cas. Co. v. Shaver*, 14 Ark. App. 217, 686 S.W.2d 808 (1985); *Miller v. Hardwick*, 267 Ark. 841, 591 S.W.2d 659 (Ark. App. 1980) (all holding that, while information disclosed during discovery is not a pleading or a defense to a pleading, such information may give rise to amendments to pleadings).

Neste failed to object to Marsh's testimony at any time on the basis that Viper had failed to specifically plead its lost profits. Neste's response to Viper's summary-judgment motion on damages did not indicate that the lost-profits issue was not properly

pled. When Neste sought to prohibit Marsh's trial testimony through a motion *in limine*, its motion and supporting brief did not raise the issue of the lost profits not being properly pled. Instead, it merely questioned Marsh's qualifications. It was not until Neste's oral motion at trial seeking to limit Viper to the damages mentioned in its complaint and amended complaint that the issue of lost profits not being specifically pled by Viper was raised. However, the trial court allowed Marsh to testify and noted that Neste could object to evidence on the different types of damages. The result of the trial court's ruling was to require Neste to make a specific objection to Marsh's testimony at trial. *See Casteel v. State Farm Mut. Auto. Ins. Co.*, 66 Ark. App. 220, 989 S.W.2d 547 (1999).

■■ At trial, Neste objected when Marsh was tendered as an expert witness on the basis that he lacked the qualifications to testify as to any issue in the case. The trial court overruled the objection and qualified Marsh as an expert. Later, as Marsh was about to give his opinion on Viper's lost profits, Neste objected on the basis of "the same objection we made before the court before as to the appropriateness of this testimony and the measure of damages." The trial court overruled the objection, and Marsh proceed to give his opinion as to Viper's lost profits. The objection that was raised went to Marsh's qualifications as an expert and the appropriate measure of damages, *i.e.*, whether the measure of damages is the difference in fair market value, not that the lost profits had not been specifically pled. Therefore, without the objection now being urged on appeal, the trial court could have, under Ark. R. Civ. P. 15(b), properly considered the pleadings as amended to conform to the proof. Moreover, there is no claim of surprise by Neste. In fact, Neste conceded at oral argument that it could not claim surprise, based on Angulo's statements at the November 2003 pre-trial conference. Permitting the introduction of proof on an issue not raised in the pleadings constitutes an implied consent to trial on that issue. *Ison Props., LLC v. Wood*, 85 Ark. App. 443, 156 S.W.3d 742 (2004). We will not reverse a trial court's decision regarding the amendment of pleadings to conform to the evidence in the absence of a manifest abuse of discretion. *Id.* Here, we cannot say that the trial court abused its discretion in this regard. Therefore, we affirm on this point.

■■ Neste next argues that it was prejudiced because the trial court refused to allow it to submit its affirmative defenses to

Viper's evidence concerning lost profits. As noted above, Viper disclosed that it was seeking lost profits at a November 2003 pretrial hearing. Neste did not object or seek a continuance at that time. Rather, Neste waited until May 6, 2004, to move for a continuance and did not file its affirmative defenses until the day of trial. Any prejudice to Neste comes from its own failure to comply with the trial court's scheduling order and deadlines and not from any failure by Viper to properly plead that it was seeking lost profits. A trial court's decision regarding the striking of a pleading will not be reversed in the absence of an abuse of discretion. *Ison Props., supra.* We cannot say that the trial court abused its discretion by striking Neste's affirmative defenses first raised on the morning of trial.

■ The third issue is whether the trial court erred in rejecting Neste's request to submit the verdict on interrogatories to the jury. It is within the trial court's discretion whether to submit a case to the jury on a general verdict or on interrogatories. Ark. R. Civ. P. 49(a); *Hough v. Continental Leasing Corp.*, 275 Ark. 340, 630 S.W.2d 19 (1982). The complaining party should show how the trial court abused its discretion in failing to submit the proposed interrogatories. *National Sec. Fire & Cas. Co. v. Williams*, 16 Ark. App. 182, 698 S.W.2d 811 (1985). The form of the special verdicts submitted to the jury is also within the trial court's discretion. *See* Ark. R. Civ. P. 49(b).

■ ■ The trial court did not abuse its discretion in rejecting Neste's proffered special interrogatories. "The essential purpose to be served by interrogatories is to test the correctness of a general verdict by eliciting from the jury its assessment of the determinative issues presented by a given controversy in the context of evidence presented at trial." *Cincinnati Riverfront Coliseum, Inc. v. McNulty Co.*, 504 N.E.2d 415, 418 (Ohio 1986); *see also Argo v. Blackshear*, 242 Ark. 817, 416 S.W.2d 314 (1967); David Newbern and John Watkins, *Arkansas Civil Practice and Procedure* § 25-3 (3d ed. 2002). Neste's proposed interrogatories did not address ultimate or determinative issues. The relevant ultimate or determinative issue is the amount of lost profits Viper suffered due to the defective clear coat. Neste, in effect, sought to have the jury "itemize" those damages according to arbitrary dates. Such itemizations are not determinative and would not test the ultimate verdict in this case regarding the appropriateness of an award of lost

profits. *UZ Engineered Prods. Co. v. Midwest Motor Supply Co., Inc.*, 770 N.E.2d 1068 (Ohio App. 2001). Also, the interrogatories submitted omitted some of the elements of damage claimed by Viper. Like jury instructions, special interrogatories should accurately reflect the evidence and the damages claimed. *McDaniel Bros. Const. Co. v. Mid-State Const. Co.*, 252 Ark. 1223, 482 S.W.2d 825 (1972); *see also Pineview Farms, Inc. v. Smith Harvestore, Inc.*, 298 Ark. 78, 765 S.W.2d 924 (1989); *Property Owners Improvement Dist. v. Williford*, 40 Ark. App. 172, 843 S.W.2d 862 (1992).

■ The final issue raised by Neste is that it should be awarded a new trial because of the cumulative errors alleged in the first three points. We do not reach the merits of this cumulative-error argument, as Neste failed to make a cumulative-error objection below. The supreme court has previously held that an appellant asserting a cumulative-error argument must show that there were individual objections to the alleged errors *and* that the cumulative-error objection was made to the trial court and a ruling was obtained. *Southern Farm Bureau Cas. Ins. Co. v. Daggett*, 354 Ark. 112, 118 S.W.3d 525 (2003); *Edwards v. Stills*, 335 Ark. 470, 984 S.W.2d 366 (1998).

Affirmed.

VAUGHT, J., agrees.

HART, J., concurs.

JOSEPHINE LINKER HART, Judge, concurring. I agree that this case must be affirmed, but write separately because I respectfully disagree with the majority's analysis concerning Neste Polyester's argument that the trial court erred in admitting evidence concerning Viper's lost profits theory for recovery of damages because lost profits are "special damages," and Viper failed to comply with Rule 9(g) of the Arkansas Rules of Civil Procedure that its damage theory be specifically pled. I cannot agree that Viper's pleadings "substantially complied" with Rule 9(g), or that this point was somehow barred because he failed to object to Viper's expert testifying about lost profits. Neste's argument fails simply because it has long been settled law that the purpose of requiring special damages to be pled is to prevent surprise, and where no surprise is pleaded and no time requested to prepare to meet the issue, there is no error. *Arkansas Louisiana Gas Co. v. McGaughey Bros., Inc.*, 250 Ark. 1083, 468

S.W.2d 754 (1971). At oral arguments, Neste stated unequivocally that it was not surprised by Viper's damage theory; therefore, there is no reversible error.

I concur.